UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA,**

 Plaintiff,

 v.                  Case No. 16-CR-5

**MARQUECE L. HART,**

 Defendant.

---

### RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS

---

On January 5, 2016, a grand jury sitting in the Eastern District of Wisconsin returned a single count indictment against defendant Marquece L. Hart. The indictment charges Hart with being a felon in possession of ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Jury trial before the Honorable Pamela Pepper is adjourned pending resolution of pretrial motions.

Before me is Hart's motion to suppress evidence obtained pursuant to a state court search warrant executed on a residence located at 10543 West Wabash Avenue on December 8, 2015. Hart argues that the search violated his rights under the Fourth Amendment because the search warrant was not supported by probable cause. For the reasons that follow, I recommend that Hart's motion to suppress be denied.

### FACTS

On December 4, 2015, Milwaukee County Court Commissioner Barry Phillips issued a warrant for 10543 West Wabash Avenue in Milwaukee, Wisconsin. (Gov't Exh. 1, Docket # 23.) The warrant application was supported by the affidavit of Milwaukee Police

Detective Chad Vartanian. (*Id.*) Detective Vartanian averred that he was a Deputized Task Force Officer working with the FBI/MPD Regional Gang Task Force. (*Id.* ¶ 1.) Detective Vartanian stated that in April 2014, the FBI/MPD Regional Gang Task Force initiated a long term criminal street gang and narcotics conspiracy case into a group of subjects in Milwaukee that identify themselves as "HPT/ATK." (*Id.* ¶ 4.) The investigation was ongoing for approximately 14 months and culminated in a grand jury indictment of 21 members of the group on June 2, 2015. (*Id.*) Detective Vartanian stated that several members of the group who were indicted in federal court were offered Proffer Letters by the federal government and agreed to cooperate with law enforcement to further the investigation into the group, with the main goal being to solidify the remaining nine members as co-conspirators in the case. (*Id.*) Detective Vartanian stated that the subjects under Proffer were debriefed at great lengths about their activities—both narcotic and weapons related offenses—and the debriefs were in the presence of law enforcement officers. (*Id.*) The group members under indictment and cooperating are identified as "Sources of Information" or "SOI" in the affidavit. (*Id.*) Detective Vartanian relied upon information from these SOIs in his affidavit. On December 8, 2015, Task Force officers executed the search warrant on 10543 West Wabash Avenue and located two firearms and various cartridges of ammunition.

## ANALYSIS

The court's duty in reviewing a search warrant and its supporting material is limited. The duty of the reviewing court is simply to ensure that the issuing judicial official had a "substantial basis" for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). In determining probable cause, the "task of the issuing magistrate" is "simply

to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238. Probable cause is dependent upon both the content of the information possessed by the police and its degree of reliability. *Alabama v. White*, 496 U.S. 325, 330 (1990). Both factors—quantity and quality—are considered in the totality of the circumstances. *Id.* Probable cause is "a fluid concept—turning on the assessment of probabilities in particular factual contexts." *Gates*, 462 U.S. at 232.

Hart challenges the search warrant on the grounds that it lacked probable cause. He makes three arguments: (1) that the information contained in the affidavit is stale; (2) that the affidavit does not establish the veracity of the referenced informants; and (3) that the affidavit does not connect Hart's residence with the alleged activity asserted in the affidavit. I will address each in turn.

   1.   *Staleness*

Hart argues that the warrant lacks probable cause because the information in the affidavit is stale. Hart argues that the SOIs provide little, if any, detail into how they have knowledge of Hart's alleged drug trafficking and argues that the information is "considerably dated." (Def.'s Br. at 7, Docket # 18.)

It is true that the age of the information supporting the application for a warrant is a factor that the magistrate judge should consider when determining that there is probable cause to believe that evidence being sought will be found in the place to be searched. *United States v. McNeese*, 901 F.2d 585, 596-97 (7th Cir. 1990), *overruled on other grounds*, *United States v. Westmoreland*, 240 F.3d 618 (7th Cir. 2001). If the information is too old, it is considered stale and probable cause no longer exists. *Id.* at 597. Nevertheless, the warrant can be issued

3

if other factors indicate that the information is reliable and that the object of the search will still be on the premises. *Id.* Further, "[i]t is well established that the '[p]assage of time is less critical when the affidavit refers to facts that indicate ongoing continuous criminal activity.'" *United States v. Mitten*, 592 F.3d 767, 775 (7th Cir. 2010) (quoting *United States v. Pless*, 982 F.2d 1118, 1125-26 (7th Cir.1992)); *see also McNeese*, 901 F.2d at 597 ("[W]hen a conspiracy to distribute drugs has been ongoing for years, and is clearly an activity of a protracted and continuous nature, the passage of time between the last described act and the application for the warrant diminishes in significance.").

The warrant was issued on December 4, 2015. In the warrant affidavit, Detective Vartanian references debriefs of SOIs that took place in August 2014, September 2014, July 2015, August 2015, September 2015, and November 2015. (Gov't Exh. 1 ¶¶ 5-11.) In a debrief taking place on August 19, 2014, the SOI indicated that he/she had purchased crack cocaine from Hart "on numerous occasions." (*Id.* ¶ 5.) During the August 28, 2014 debrief, the SOI stated that he/she had never purchased narcotics from Hart, but knew that Hart belonged to the group identified as "HPT/ATK" and that Hart worked to distribute narcotics with three other named subjects. (*Id.* ¶ 6.)

During the September 26, 2014 debrief, the SOI indicated that he/she had purchased cocaine from Hart on two separate occasions in May and June of 2014. (*Id.* ¶ 7.) During the July 1, 2015 debrief, the SOI stated that he never purchased cocaine from Hart, but knew that Hart was affiliated with "HPT/ATK" and had observed Hart traffic cocaine in Milwaukee. (*Id.* ¶ 8.) On August 10, 2015, a SOI indicated that he never purchased cocaine from Hart, but "middled" a cocaine deal for Hart in 2014. (*Id.* ¶ 9.) During a debrief on September 29, 2015, the SOI stated that he would "middle" cocaine sales for Hart beginning

in 2013 and lasting until the end of 2014. (*Id.* ¶ 10.) On November 18, 2015, a SOI stated that that he/she had been in the presence of Hart over 100 times in the past few years, including as recent as the past 30 days, at which time the SOI observed Hart traffic cocaine to customers. (*Id.* ¶ 11.) The SOI indicated that Hart was currently trying to put money together to purchase cocaine. (*Id.*) The SOI also indicated that in May or June 2015, Hart received $1,000 from Anthony Walton to purchase cocaine. (*Id.*)

Looking at the totality of the affidavit, the nature of the offense charged—an ongoing drug conspiracy—weighs against a finding of staleness. SOIs described "middling" cocaine deals for Hart in 2013 and 2014. (*Id.* ¶¶ 9-10.) A SOI indicated that he/she had purchased cocaine from Hart on two separate occasions in May and June of 2014. (*Id.* ¶ 7.) A SOI described a drug transaction taking place between Hart and Walton in May or early June of 2015. (*Id.* ¶ 11.) Most importantly, although relying solely on these earlier statements would be concerning, the affidavit also contains a recent debrief on November 18, 2015 in which the SOI stated that he/she had observed Hart traffic cocaine to customers as recently as within the past 30 days. (*Id.*) Given the fact that the affidavit indicates an ongoing pattern of drug trafficking by Hart and contains information from a SOI of drug trafficking occurring less than two months prior to the issuance of the search warrant, I find that the warrant does not fail for staleness.

As to both the staleness argument and the veracity argument discussed below, Hart also argues that the affidavit lacks detail. While I agree, this is not fatal to the probable cause analysis. The affidavit must be examined as a whole, not in parts. Here, the issuing Court Commissioner had before him allegations of a pattern of activities over an extended

5
Case 2:16-cr-00005-PP    Filed 04/05/16    Page 5 of 12    Document 29

period of time such that the different pieces of information, though not detailed, formed a mosaic sufficient to establish probable cause.

### 2.  *Veracity of Informants*

Hart further argues that the warrant lacks probable cause because the affidavit does not establish the veracity of the informants and because the statements made by the SOIs lacked detail and were not corroborated by law enforcement. (Def.'s Br. at 9.) Further, all of the SOIs are either under indictment or presumably cooperating in relation to other pending allegations. (*Id.*)

As explained above, probable cause sufficient to support a warrant exists where "'the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found.'" *United States v. Olson*, 408 F.3d 366, 370 (7th Cir. 2005) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). When the affidavit includes information supplied by an informant, the court considers: "(1) the extent to which the police have corroborated the informant's statements; (2) the degree to which the informant has acquired knowledge of the events through firsthand observation; (3) the amount of detail provided; and (4) the interval between the date of the events and police officer's application for the search warrant." *United States v. Farmer*, 543 F.3d 363, 377 (7th Cir. 2008) (internal quotation and citation omitted).

In this case, Detective Vartanian states that the information provided by the SOIs and the named sources was "verified through alternate investigative methods." (Gov't Exh. 1 ¶ 14.) However, he does not explain what those alternate investigative methods were. Despite this lack of police corroboration, the affidavit, which details on-going drug trafficking, shows consistency between the information provided by the different SOIs. For

example, several SOIs identified Hart as a member of "HPT/ATK," stated that he goes by the nickname "Snake," and noted that Hart distributed narcotics with Rodney Rowsey, Julius Gonzalez, and Jerrold Ezell. (*Id.* ¶¶ 5-9.) Also, two SOIs indicated they had "middled" cocaine sales between Deron Gilbert and Hart, with Gilbert being the supplier and Hart the purchaser. (*Id.* ¶¶ 9-10.)

Further, the fact that all of the SOIs are either under indictment or presumably cooperating does not in itself defeat their reliability. The SOIs made statements against their penal interest when they admitted to law enforcement their own involvement in drug trafficking. These statements against penal interest carry a presumption of reliability. *See United States v. Harris*, 403 U.S. 573, 583 (1971) ("People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search."). Even if the SOIs are attempting to mitigate their own culpability by cooperating with law enforcement, the Seventh Circuit has stated that an informant who is "attempt[ing] to strike a bargain with the police [has] a strong incentive to provide accurate and specific information rather than false information about [the defendant's] illegal activity." *See United States v. Koerth*, 312 F.3d 862, 870 (7th Cir. 2002). In the end, though the affidavit would have been strengthened by the affiant explicitly stating how law enforcement corroborated the information provided by the SOIs, the affidavit does contain sufficient information for the issuing Court Commissioner to have concluded that the SOIs corroborated each other.

### 3. Connection to the Residence

Hart further argues that the information does not support probable cause that he would have evidence of drug trafficking in his home at the time the warrant was issued. (Def.'s Br. at 8.) In other words, Hart challenges the nexus between his alleged drug activities and his residence. This is Hart's strongest argument as the affidavit indeed does not allege that any criminal activity, recent or past, occurred at that residence. For example, there are no controlled buys from the residence, no statements by SOIs of having been in the residence or having observed anything of evidentiary value at the residence, and no law enforcement surveillance of criminal or suspicious activity at the residence. The only mention of the residence is that Hart's girlfriend confirmed that Hart resides there with her and has resided there for approximately three years. (Gov't Exh. 1 ¶ 12.) Additionally, a SOI said that Hart is using rental cars for drug trafficking and Hart's girlfriend is renting the cars. (*Id.* ¶ 11.) Detective Vartanian then opined that based on his experience, these car receipts are kept in a drug dealer's residence. (*Id.* ¶ 13.)

It is true that probable cause does not require direct evidence linking a crime to a particular place. *United States v. Anderson*, 450 F.3d 294, 303 (7th Cir. 2006). Additionally, a judge is "'entitled to draw reasonable inferences about where the evidence is likely to be kept, based on the nature of the evidence and the type of offense, *and that in the case of drug dealers evidence is likely to be found where the dealers live*.'" *United States v. McClellan*, 165 F.3d 535, 546 (7th Cir. 1999) (quoting *United States v. Reddrick*, 90 F.3d 1276, 1281 (7th Cir. 1996)) (emphasis in original). But the Seventh Circuit has also stated that it is "inappropriate to adopt a categorical rule that would, in every case, uphold a finding of probable cause to search a particular location simply because a suspected drug trafficker

resides there." *United States v. Wiley*, 475 F.3d 908, 916 (7th Cir. 2007). This case runs afoul of this admonishment. Here, the affidavit supports a finding that Hart is probably engaged in drug trafficking. But what about his residence? What the affidavit offers is confirmation that Hart, an alleged drug trafficker, resides in a particular location and has resided there for approximately three years and the affiant's opinion that drug dealers generally keep evidence of their drug dealing in their residence. However, there is nothing more in the affidavit specifically linking Hart's alleged drug activities to his residence. *See McClellan*, 165 F.3d at 546 (finding sufficient connection to residence when affidavit established not only that the defendant dealt in drugs, but also established that the defendant unloaded narcotics from his pick-up truck to a storage facility located at his residence and that monetary proceeds from the sale of narcotics were delivered to the residence); *Wiley*, 475 F.3d at 911, 916-17 (finding the affidavit supported a sufficient nexus to the defendant's residence when a CI observed the defendant cook powder cocaine into crack in the residence and when the CI linked a drug trafficker to the defendant and police observed this individual enter the defendant's residence and leave a bag inside). Accordingly, I find that the affidavit did not offer a substantial basis for the Court Commissioner to conclude that evidence of drug trafficking would likely be found at Hart's residence.

    4.    *Good Faith Exception*

Despite the deficiency discussed above, the warrant can be saved by the good faith exception if the executing police officer could "have reasonably believed that the facts set forth in the affidavit were sufficient to support a magistrate's finding of probable cause." *Koerth*, 312 F.3d at 866 (citing *United States v. Leon*, 468 U.S. 897, 920-24 (1984)). The Government bears the burden of demonstrating by a preponderance of the evidence that the

police relied in "good faith" on the judge's decision to issue the warrant. *Id.* at 868. However, an officer's decision to seek a warrant is *prima facie* evidence that he acted in good faith. *Id.*; *see also Leon*, 468 U.S. at 924 ("When officers have acted pursuant to a warrant, the prosecution should ordinarily be able to establish objective good faith without a substantial expenditure of judicial time"). To rebut this presumption, the defendant may show that: (1) the judge issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) the judge wholly abandoned his neutral, detached judicial role and simply rubber-stamped the warrant application; or (3) the warrant was based on an affidavit so lacking in indicia of probable cause that no reasonable officer could have relied on it. *See Leon*, 468 U.S. at 923; *Koerth*, 312 F.3d at 868.

Additionally, police officers are "charged with a knowledge of well-established legal principles" and the corresponding "responsibility to learn and follow applicable legal precedent." *United States v. Searcy*, 664 F.3d 1119, 1124 (7th Cir. 2011) (internal quotations and citations omitted). Thus, the evidence is admissible unless (1) courts have clearly held that a materially similar affidavit previously failed to establish probable cause under facts that were indistinguishable from those presented in the case at hand, or (2) the affidavit is so plainly deficient that any reasonably well-trained officer "would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Id.* (internal quotations and citations omitted).

Hart argues that the good faith exception should not save this warrant because the affidavit in this case was so plainly deficient that any reasonably well trained officer would have known that the affidavit failed to establish probable cause. (Def.'s Reply Br. at 2-3, Docket # 25). As explained above, although not a model of affidavits, the affidavit

contained several statements from SOIs containing first-hand knowledge of Hart's alleged illegal activity, as well as statements against the SOIs' penal interest, even if the statements were "presented in a conclusory and essentially uncorroborated fashion." *See Koerth*, 312 F.3d at 870 (finding good faith exception applied when named informant had first-hand knowledge of criminal activity and made statements against penal interest). Additionally, while the Detective failed to state explicitly how the law enforcement corroborated the SOIs, the SOIs statements corroborated each other. Finally, while the affidavit failed to sufficiently connect Hart's alleged drug activities with his residence, the affidavit as a whole was not so plainly deficient that any reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant. Moreover, "an officer cannot be expected to question the magistrate's probable-cause determination." *Leon*, 468 U.S. at 921. Accordingly, the warrant is saved by the good faith exception and the evidence should not be suppressed.

**NOW, THEREFORE, IT IS RECOMMENDED** that the defendant's motion to suppress (Docket # 16) be **DENIED**.

Your attention is directed to General L.R. 72(c), 28 U.S.C. § 636(b)(1)(B) and Federal Rules of Criminal Procedure 59(b), or Federal Rules of Civil Procedure 72(b) if applicable, whereby written objections to any recommendation or order herein, or part thereof, may be filed within fourteen days of the date of service of this recommendation or order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely

objection with the district court shall result in a waiver of a party's right to appeal. If no response or reply will be filed, please notify the Court in writing.

Dated at Milwaukee, Wisconsin this 5th day of April, 2016.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge